UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOTSADOUGH, INC.,

      Plaintiff,         Case No.  12-10121
                  Honorable David M. Lawson
v.

COMERICA BANK,

      Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING AMENDED COMPLAINT WITH PREJUDICE

Plaintiff Lotsadough, Inc. has sued defendant Comerica Bank for failing to fund a commercial loan that would have allowed the plaintiff to buy a pizza restaurant.  Comerica expressed interest in loaning the money to the plaintiff and the application process was proceeding apace.  On the date of closing, however, a dispute arose when it became clear that the plaintiff had granted to its prospective landlord a security interest in all its business assets, including the plaintiff's liquor license.  Comerica refused to accept a second-priority lien, and the landlord refused to subordinate his lien to Comerica.  Comerica did not fund the loan, and litigation ensued.  Presently before the Court are the parties' cross motions for summary judgment.  The Court heard oral argument on October 22, 2012.  There are no genuine disputes on any of the material facts.  The Court finds that a condition of the loan was a first security interest in the plaintiff's business assets, and Comerica was within its rights to decline the loan when the plaintiff failed to deliver.  Therefore, the Court will deny the plaintiff's motion for partial summary judgment, grant the defendant's motion for summary judgment, and dismiss the plaintiff's amended complaint.

I.

The facts of the case are straightforward and mostly uncontested.  The debate in this case focuses on whether the plaintiff was required to obtain for defendant Comerica Bank a first-priority lien on the plaintiff's business assets, including a liquor license, as a condition precedent to receiving a loan from Comerica.

Plaintiff Lotsadough entered into an agreement on June 22, 2008 to purchase the Shield's Pizzeria Restaurant located on Twelve Mile Road in Warren, Michigan from JNL Ventures.  The purchase price was $300,000.  To finance this purchase, the plaintiff applied for a commercial loan for $200,000 with Comerica Bank.  The loan was to be secured by collateral: a bank-approved term sheet dated August 4, 2008 states that the loan will be "[s]ecured by a lien on all business assets of" the plaintiff.  Def.'s Mot. for Summ. J. Ex. 1.

JNL Ventures did not own the building in which the restaurant was located.  Instead, JNL leased the premises from The Whole Limited, L.L.C. ("the landlord").  Part of the sales agreement was that JNL would assign its interest in the lease to the plaintiff.  The lease apparently contained as security a pledge of assets by JNL to its landlord.  Predictably, the landlord included the following conditions as part of its consent to the assignment of the lease to the plaintiff:

> **5.  Security Interest of Landlord.**  In consideration of Landlord consenting to the assignment of the Lease and pursuant to the terms of the Lease, [Lotsadough] hereby grants Landlord a continuing security interested in the Class "C" liquor license and applicable permits relating to the Premises and all of the assets owned and used in the operation of [Lotsadough]'s business located on the Premises . . . .
> **6.  Consent of Landlord.**  Landlord hereby consents to the assignment of Assignor's right, title and interest in and to the Lease to Assignor and to the assumption of all of [Lotsadough]'s obligations under the Lease by Assignor, subject to the personal guarantees, security interests and other rights and obligations granted and/or created pursuant to this Agreement.

Def.'s Mot. for Summ. J. Ex. 8.

-2-

Meanwhile, Comerica's loan term sheet stated that "the loan is subject to certain general conditions including but not limited to: due diligence, documentation satisfactory to Comerica Bank in all respects, evidence of compliance with all laws, opinion of counsel, evidence of insurance and other documentation that may be required." Def.'s Mot. for Summ. J. Ex. 1. A documentation checklist dated August 7, 2008 states that a security agreement, a note, and a lessor's acknowledgment and subordination or an acknowledgment and consent to assignment is required to complete the agreement. The closing agenda, prepared alongside the checklist, contains closing instructions that required that the lessor's acknowledgment and subordination be produced prior to final approval of the loan. Before the closing, the plaintiff provided Comerica a copy of the lease and the proposed lease assignment, which contained the provisions quoted above stating that the landlord would retain a security interest in the liquor license and the plaintiff's other business assets.

On December 11, 2008, the plaintiff signed the loan documents, which included an installment note for $200,000, a series of personal guarantees for the note, a security agreement, a corporate resolution granting authority to procure loans, and an assignment and assumption of lease. Remarkably, in the security agreement, the plaintiff promised that

> Debtor will keep the Collateral free at all times from all claims, liens, security interests and encumbrances other than those in favor of Bank. Debtor will not, without the prior written consent of Bank, sell, transfer or lease, or permit to be sold, transferred or leased, any or all of the Collateral . . . .

Pl.'s Mot. for Summ. J. Ex. 5. The plaintiff also executed a pledge of the liquor license on December 11, 2008, stating that the plaintiff agreed to assign its liquor license to Comerica as security for the loan. The pledge contained a representation that the plaintiff had not and would not "contract or agree to assign to any person or persons . . . the License without first obtaining the written consent of the Bank . . . ." Def.'s Mot. for Summ. J. Ex. 6. The plaintiff also presented the

-3-

2:12-cv-10121-DML-DRG   Doc # 31   Filed 10/23/12   Pg 4 of 16   Pg ID 918

"Assignment/Assumption of Lease," which contained the language quoted above granting a security interest in the plaintiff's business assets — including the liquor license — to the landlord. It does not appear that the landlord ever signed that document, however.

There was another document in the closing package: lessor's acknowledgment and subordination agreement. That acknowledgment and subordination stated that the landlord agreed that "any lien or security interest [the landlord] may claim against any of [the plaintiff's p]roperty is subordinated to any lien or security interest now or subsequently held by" Comerica. Def.'s Mot. for Summ. J. Ex. 7. The landlord refused to sign that subordination agreement.

When the loan documents were signed and presented, Comerica learned that the landlord intended to retain a first-priority security interest in the liquor license and the plaintiff's other business assets. Comerica then decided not to complete the loan transaction. Albert Trescone, the principal of JNL, testified that it was a "surprise" to him that Comerica wanted a security interest in the liquor license. Pl.'s Mot. for Summ. J. Ex. 12 Trescone dep. at 39. Dean Bach, one of the principals of the plaintiff, stated that he did not have any intention of assigning the liquor license to the defendant, that such an assignment was not part of the original agreement with the defendant, and that he was not aware that the defendant would request a security interest in any of the plaintiff's assets. Bach stated that he signed the closing documents without reading them. Bach also stated that he did not recall any conversation with the defendant about the security interest in the liquor license. Donald Cline, a Comerica loan officer, stated that Comerica usually required first lien interests on collateral, and that if a second lien were acceptable it would be designated specifically in the loan documentation. Cline testified that he assumed that requirement was communicated to the plaintiff, but he could not recall when. Larry Schupach, a Comerica vice president, testified that

-4-

if a second priority lien were acceptable, it would be communicated to the party seeking a loan either verbally or in the loan documents. Schupach agreed that a second priority security interest is in fact a security interest, but he stated that "in the eyes of the bank from the collateral point of view, it's pretty much worthless." Pl.'s Mot. for Summ. J. Ex. 23 Shupach dep. at 76. Ultimately, Comerica called back the funds and did not fund the loan. As a result, the plaintiff was unable to purchase the franchise from JNL. The plaintiff released the deposit provided for in the purchase agreement to JNL on January 20, 2009.

When the deal fell through, JNL's principal sued Lotsadough in state court. Lotsadough then filed its own lawsuit in this court on January 11, 2012. Its five-count complaint, amended once, includes claims denominated: breach of contract, specific performance/consequential damages, promissory estoppel, tortious interference with a contract and/or contractual relationship, and declaratory judgment. After a period of discovery, both sides filed cross motions for summary judgment.

## II.

The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standards when deciding such cross motions: when this Court considers cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most

favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The parties have not seriously contested the basic facts of the case. The main issue centers on what is meant by the loan documents and the legal obligations they create upon the respective parties. Where the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

This case is before the Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and the plaintiff's claims are based entirely on state law. Therefore, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). All agree that Michigan law applies to this dispute. If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (quoting *Bailey v. V. & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data includes the state's intermediate appellate court decisions, as well as the state supreme court's relevant *dicta*, restatements of the law, law review commentaries, and the majority rule among other states." *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001) (internal quotation marks and citation omitted).

-6-

The plaintiff contends that it should prevail on its breach of contract claim as a matter of law because it unquestionably complied with all the requirements set out in the loan documents, and Comerica therefore was required to fund the loan.  The plaintiff points out that Comerica prepared all of the documentation to close the loan, and that in addition, the defendant signed a closing document agreeing to disburse the loan funds when the plaintiff assigned the liquor license to the defendant.  The plaintiff states that it signed an assignment of the liquor license, and that Comerica's insistence on a first priority lien in the liquor license is inconsistent with the language in the loan documents, which do not refer to the priority of the lien.  The plaintiff contends that the language in the agreement is clear that the collateral must be secured by a lien on the plaintiff's business assets, and the Court is not free to add additional terms, that being that the lien must be senior to other encumbrances.  The plaintiff also argues that once the liquor license assignment was signed, Comerica was not permitted to withhold distribution of funds based on its belief that the plaintiff had breached its representations or warranties.  Instead, the plaintiff contends, Comerica was limited to following the self-help remedies set forth in the agreements.

Comerica argues that the plaintiff's claim is barred by Michigan Compiled Laws § 566.132(2), which states that an action may not be brought against a financial institution for failure to make a loan unless the commitment is in writing and signed by the financial institution.  Comerica asserts that it did not sign any documents agreeing to take a second lien interest in the plaintiff's assets; instead, the agreements read together expressly state that the defendant would have the only lien on those assets, including the liquor license.

Comerica also insists that it was not required to advance funds to the plaintiff because the agreement was not consummated.  The plaintiff counters that the December 11, 2008 closing letter

concerning the liquor license became the master document controlling the entire transaction and circumscribing all conditions and remedies and amounts to a novation. But Comerica asserts that the closing letter simply discusses the assignment of the liquor license, and the plaintiff's failure to meet all conditions precedent under the loan agreements invalidated the agreement.

On the question of remedies, Comerica finds untenable the plaintiff's position that the bank was required to fund the loan and then call the note for a breach of the security agreement. Even if one were to find that Comerica owed the plaintiff the loan proceeds at some point in the transaction, Comerica points to its remedy provisions in the loan documents that entitle it, upon the plaintiff's breach, to declare all amounts due and offset the plaintiff's accounts for the balance of the loan.

The defendant plainly has the better argument here. A second priority security interest in the plaintiff's assets in this case would be tantamount to no security interest at all. It is inconceivable that Comerica would have been willing to grant what would amount to an unsecured $200,000 loan so the plaintiff could buy a pizza franchise, and none of the loan documents suggest that to be the case. Under Michigan law, when construing a contract or one of its provisions, the intentions of the parties govern. *First Nat. Bank of Ypsilanti v. Redford Chevrolet Co.*, 270 Mich. 116, 121, 258 N.W. 221, 223 (1935). To ascertain the parties' intentions, the Court looks first to the language in the written agreement. *Haywood v. Fowler*, 190 Mich. App. 253, 258, 475 N.W.2d 458, 461 (1991) ("Where the language of a contract is clear and unambiguous, the intent of the parties will be ascertained according to its plain sense and meaning."); *see also Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 61, 664 N.W.2d 776, 787 (2003) ("Well-settled principles of contract interpretation require one to first look to a contract's plain language. If the plain language

-8-

is clear, there can be only one reasonable interpretation of its meaning and, therefore, only one meaning the parties could reasonabl[y] expect to apply.  If the language is ambiguous, longstanding principles of contract law require that the ambiguous provision be construed against the drafter." (citation omitted)).  "Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided."  *Dillon v. DeNooyer Chevrolet Geo*, 217 Mich. App. 163, 166, 550 N.W.2d 846, 848 (1996).  The Court should "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory."  *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 468, 663 N.W.2d 447, 453 (2003) (citation omitted).  "'Where the language of the writing is not ambiguous the construction is a question of law for the court on a consideration of the entire instrument.'"  *In re Landwehr's Estate*, 286 Mich. 698, 702, 282 N.W. 873, 874 (1938) (quoting *Griffin Mfg. Co. v. Mitshkun*, 233 Mich. 640, 642, 207 N.W. 814, 814 (1926)).

Comerica contends that extending the loan to the plaintiff was conditioned on the plaintiff first granting Comerica a first priority lien on its business assets, including the liquor license. Without fulfillment of that condition, Comerica insists, it had no legal obligation to fund the loan. Comerica is correct on the law.  Under Michigan law, a condition precedent "is a fact or event that the parties intend must take place before there is a right to performance."  *Real Estate One v. Heller*, 272 Mich. App. 174, 179, 724 N.W.2d 738, 741 (2006) (quoting *Mikonczyk v. Detroit Newspapers, Inc.*, 238 Mich. App. 347, 605 N.W.2d 360 (1999)).  A party that fails to fulfill a condition precedent "loses all right to require the further fulfillment of the contract on the part of the other party." *Wolverine Packing Co. v. Hawley*, 251 Mich. 215, 219, 231 N.W. 617, 618 (1930) (internal quotation omitted).

Comerica points to three documents that, it argues, state that granting a first priority lien to it was a condition of the loan agreement: the liquor license agreement, the security agreement, and the term sheet.  The first two of those documents do not make Comerica's case on that point; they do not contain any language that suggests that Comerica obtaining a first priority lien was a condition precedent.  Instead, Comerica refers to warrantees and covenants in those agreements that the collateral was not subject to any other security interest and that the plaintiff would keep the collateral free of other security interests.  If those warrantees were untrue and if the plaintiff broke those covenants, that might give rise to a claim for breach of contract.  However, there is nothing in the language of those documents that indicates that the defendant's obligation to perform was contingent on — was "subject to" —  the truthfulness of the warranties.

The final document — the term sheet — is something more.  That document is dated August 4, 2008, and it is signed by Comerica's employee, Donald Cline.  The term sheet states that "the loan is *subject to* certain general conditions including but not limited to: due diligence, documentation satisfactory to Comerica Bank in all respects, evidence of compliance with all laws, opinion of counsel, evidence of insurance and other documentation that may be required." Def.'s Mot. for Summ. J. Ex. 1 (emphasis added).  Michigan courts have found that the use of "subject to" is sufficient to create an express condition precedent.  *Petoskey Title Agency, Inc. v Thompson*, No. 300251, 2012 WL 1448315, at *5 (Mich. App. Apr. 26, 2012); *Kroeger v. Aec Enterprises Const., Inc.*, No. 286333, 2009 WL 4981180, at *3 (Mich. App. Dec. 22, 2009).  Here, the term sheet states that the loan is "subject to" the plaintiff providing documentation satisfactory to Comerica, and it thereby created a condition precedent to Comerica's duty to perform.  When the plaintiff failed to

-10-

deliver documentation that established a first priority lien, it did not provide documentation satisfactory to Comerica.

There also was an obvious larger problem with the loan documents.  The plaintiff simultaneously executed (1) a security agreement and an agreement to assign the liquor license that stated that the plaintiff's business assets were and would remain free of any security interests other than Comerica's, and (2) an assignment of lease that granted the plaintiff's landlord a first priority security interest in the plaintiff's liquor license and other business assets.  That put the plaintiff in an immediate breach of the security agreement, and left Comerica with a second priority lien on the plaintiff's business assets that was, in the words of the defendant's employee Larry Schupach, "pretty much worthless" as collateral.  Pl.'s Mot. for Summ. J. Ex. 23 Shupach dep. at 76.

Although it is true that the security agreement and the license agreement do not use the words "first priority lien," they do contain representations, warranties, and covenants that Comerica's lien would be the only lien on the plaintiff's business assets.  The plaintiff's argument that those documents do not require a first priority lien and that a second priority lien is consistent with the language in those documents is sophistic.  If Comerica was granted a second priority lien on the plaintiff's business assets, it naturally follows that some other entity has the first priority lien. A second priority lien plainly does not satisfy the warranty in the security agreement that "none of the Collateral is subject to any security interest other than that in favor" of Comerica and the representation in the license agreement that the plaintiff has not and will not "contract or agree to assign to any person or persons . . . without first obtaining the written consent of the Bank . . . ." Def.'s Mot. for Summ. J. Ex. 5 ¶ 2.2, Ex.6.

-11-

There's more.  On the closing checklist, one of the required documents was a lessor's acknowledgment and subordination or a lessor's acknowledgment and consent to assignment.  The plaintiff's argument that *either* an assignment of lease *or* a lessor's subordination agreement is required by the closing checklist is a mischaracterization of the checklist: the checklist clearly states that an acknowledgment and either a subordination or a *consent* to assignment is what was required. It does not appear that the landlord provided either in this case; the plaintiff concedes that the landlord did not sign the subordination, and the landlord's signature does not appear on the assignment of lease.  The plaintiff says that the landlord attended the closing and was prepared to sign the lease assignment, that Comerica must have known that the assignment contained an asset pledge, and that its silence must be taken as consent to a second position.  But the question of whether the defendant knew of the lease prior to closing is, ultimately, irrelevant: in the face of the failure to provide documentation satisfactory to Comerica, the bank was not required to extend funds to the plaintiff.

The plaintiff responds next that the reservation of rights in the term sheet was novated or superseded by the closing documents.  According to the plaintiff, once the closing documents were signed, the defendant could not withhold loan funds; instead, its only remedy was to declare the remaining amount of the indebtedness due and payable.  That argument likewise is unavailing.  A novation occurs only "if parties to a prior agreement enter a subsequent contract which completely covers the same subject, but which contains terms inconsistent with those of the prior agreement, and where the two documents cannot stand together . . . ." *Nib Foods, Inc. v. Malley*, 70 Mich. App. 553, 560, 246 N.W.2d 317, 321 (1976).  In such a case, "the later document supercedes and rescinds the earlier agreement, leaving the subsequent contract as the sole agreement of the parties." *Ibid.*

-12-

But here, there is no reason why the documents cannot stand together.  The plaintiff argues that under the closing documents, the defendant's sole remedy if it deemed itself insecure was to declare the remaining amount of the indebtedness due and payable.  That provision does not contradict the term sheet; it can be read together with it.  The term sheet creates a condition precedent to funding the loan; the closing documents describe the remedies available to the bank should it deem itself insecure once those conditions have been satisfied and the loan funded.

"A novation requires: (1) parties capable of contracting; (2) a valid obligation to be displaced; (3) consent of all parties to the substitution based upon sufficient consideration; and (4) the extinction of the old obligation and the creation of a valid new one." *Matter of F. Yeager Bridge & Culvert Co.*, 150 Mich. App. 386, 410, 389 N.W.2d 99, 109 (1986).  In determining whether a novation occurred, "[t]he question rests in the intention of the parties as it may be gathered from the surrounding and subsequent circumstances and conduct." *Gorman v. Butzel*, 272 Mich. 525, 529, 262 N.W.2d 302, 304 (1935).  In this case, the third and fourth element are lacking.  The plaintiff has presented no evidence suggesting that Comerica intended the closing documents to constitute a novation.  Indeed, Comerica's conduct demonstrates that it believed the conditions in the term sheet still governed.

But even if the plaintiff is correct, and the closing documents superseded or novated the term sheet such that the condition precedent no longer applied, the plaintiff's claim would still fail.  The plaintiff's contention that the only remedy provided to the defendant under the closing documents was to fund the loan and declare it immediately due and payable is simply false.  The security agreement provides that nothing in it "is intended . . . to preclude" the defendant "from pursuing any other remedy provided by law or equity for the collection of the Indebtedness."  Def.'s Mot. for

-13-

Summ. J. Ex. 5 ¶ 4.5.  More importantly, the note states that if any of the plaintiff's warranties (such as the plaintiff's warranty that its business assets were unencumbered) were untrue or if the defendant deemed itself insecure, the defendant could "set off against the Indebtedness any amounts owing by the Bank" to the plaintiff without notice to the plaintiff.  Pl.'s Mot. for Summ. J. Ex. 2. Therefore, upon the discovery that the plaintiff was in default because it had breached the warranty, the defendant was within its rights to offset the plaintiff's indebtedness with the amount of the loan that the defendant owed to the plaintiff, essentially cancelling the loan.  Therefore, because the plaintiff clearly breached the warranties in the security agreement by granting a lien on its business assets to the landlord, Comerica was within its rights under the note to withhold the loan funds from the plaintiff.

There was no breach of contract, and the plaintiff's claim in count I of its amended complaint fails as a matter of law.

Once the plaintiff's breach of contract claim falls, the remaining counts of the amended complaint give way as well.  In the second count of its amended complaint, the plaintiff seeks specific performance or consequential damages.  That count of the plaintiff's amended complaint is dependent on its breach of contract claim.  If there was no breach of  contract, specific performance is not an available remedy.  The third count of the plaintiff's amended complaint is a claim based on promissory estoppel.  However, Michigan courts only apply promissory estoppel when "an implied agreement exists between the parties, in the absence of an express contract." *APJ Assocs., Inc. v. North Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003); *see also Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 395 (E.D. Mich. 2000) ("If the performance satisfying the detrimental reliance requirement is the same performance which constitutes the consideration

-14-

of a written commercial contract, the doctrine of promissory estoppel is not applicable."). In this case, the plaintiff's promissory estoppel argument is based on precisely the same facts and written agreements that support the plaintiff's breach of contract argument; indeed, the plaintiff's argument on this count is the same as its breach of contract argument. Even if the doctrine were applicable the plaintiff's claim would fail for the same reasons that its breach of contract claim fails.

The plaintiff's fourth claim is for tortious interference with the contract with JNL to purchase the pizza restaurant business. To prevail, the plaintiff must plead and prove "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a termination of the relationship or expectancy, and resultant damage to the plaintiff." *Dalley v. Dykema Gossett PLLC*, 287 Mich. App. 296, 323, 788 N.W.2d 679, 696 (2010). Moreover, the plaintiff must prove that the interference was "improper." *Advocacy Org for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 383, 670 N.W.2d 569, 579 (2003). "The 'improper' interference can be shown either by proving (1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiffs' contractual rights or business relationship." *Id.* at 383, 670 N.W.2d at 580. The tortious interference claim is based solely on Comerica's failure to fund the loan. The plaintiff has presented no evidence that that failure was malicious or done with the "improper motive" of interfering with the plaintiff's purchase of the pizza franchise. In fact, the refusal to fund the loan was justified.

Finally, the fifth count of the plaintiff's amended complaint seeks declaratory judgment that the defendant breached its contract with the plaintiff. For the several reasons discussed above, that count fails as well.

-15-

III.

The Court finds a condition of funding the loan in this case was the plaintiff's pledge of its unencumbered business assets, including the plaintiff's liquor license, as collateral.  It is undisputed that the plaintiff did not meet that condition.  The plaintiff's claim of breach of contract, and the other counts of the amended complaint, which are dependant upon it, must be dismissed as a matter of law.

Accordingly, it is **ORDERED** that the plaintiff's motion for partial summary judgment [dkt. #24] is **DENIED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt. #25] is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: October 23, 2012

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 23, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL

</div>

-16-